UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:20-cv-00145-TBR

CAROLYN CHANCELLOR                                      PLAINTIFF

v.

CHURCH & DWIGHT CO., INC. *et al*.                       DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment, [DN 36], and Plaintiff's Motion to Defer Ruling Pending Filing of Deposition Transcripts. [DN 44]. Both motions have been fully briefed. As such, this matter is ripe for adjudication. For reasons stated herein, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Motion to Defer Ruling is **DENIED AS MOOT**.

    **I.**     **Background**

Plaintiff Carolyn Chancellor claims that on January 2, 2020, she was injured while shopping at Defendant Family Dollar Stores of Kentucky, LP's (Family Dollar) store. [DN 1-1 at 3]. Chancellor explained that, because the laundry detergent she wanted to purchase was placed on the top shelf, she was too short to reach it, and therefore had to enlist the assistance of another shopper, Joshua Riley. *Id.*; [DN 36 at 2; DN 39 at 3]. The detergent, "XTRA," is manufactured by Defendant Church & Dwight Co., Inc. (Church & Dwight) and sold by Defendants Family Dollar and Dollar Tree Stores, Inc. (Dollar Tree). [DN 1-1 at 3; DN 1-3 at 2]. While Riley was trying to get the detergent off the shelf, it fell to its side and the top popped off resulting in detergent falling onto Chancellor and the floor. [DN 36 at 2].

This incident, Plaintiff claims, has resulted in injuries to both her ears and eyes. [DN 1-1 at 3]. Plaintiff initiated this negligence, breach of warranty, and strict liability action by filing a complaint on June 29, 2020, in McCracken County Circuit Court. [DN 1-1]. Defendants answered and removed the action to this Court based on diversity of citizenship. [DN 1; DN 1-3; DN 9]. On September 9, 2020, Plaintiff filed a Rule 26 Initial Disclosure Statement which did not list any experts but provided the names of all treating physicians as "individuals likely to have discoverable information." [DN 11]. On August 30, 2021, after gaining approval by the Court to depose her treating physicians after the close of discovery, Plaintiff deposed her otolaryngologist, Dr. James Hawkins. [DN 75]. Defendants filed a Third-Party Complaint against Riley, [DN 29], and subsequently filed the present Motion for Summary Judgment, [DN 36], arguing that Chancellor's failure to identify any experts prior to the Scheduling Order Date of April 15, 2021, should result in summary judgment, because without experts Defendant is unable to prove that the detergent caused her injuries.

## II.     Legal Standard

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citations omitted). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

"The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to overcome summary judgment. *Id.* The moving party must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the nonmovant's claim or defense. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

### III. Discussion

#### A. Negligence – Causation

"To prevail on a negligence claim under Kentucky law, the plaintiff must prove that the defendant 1) owed the plaintiff a duty of care, 2) the defendant breached the standard of care by which his duty is measured, and 3) that the breach was the legal cause of the consequent injury." *Tingle v. Cornelison*, No. 3:15-CV-00319-RGJ, 2018 WL 6594544, at *4 (W.D. Ky. Dec. 14, 2018) (citing *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012)). Causation is a mixed question of law and fact. *Pathways*, 113 S.W.3d at 89. Thus, in order to prevail on her claim, Chancellor must be able to establish causation. To do so under Kentucky law, a plaintiff is required to prove that the defendant's negligent conduct was a "'substantial factor' in bringing about the harm." *Id.* at 92 (quoting Restatement (Second) of Torts § 431). The Court must "determine 'whether the evidence as to the facts makes an issue upon which the jury may reasonably differ as to whether the conduct of the defendant has been a substantial factor in causing the harm to the

plaintiff.'" *Id.* (quoting Restatement (Second) of Torts § 434(1)(a)). In making this determination, the Court must view all facts in favor of the nonmovant. *Id.* If the Court determines that the jury may not reasonably differ, the Court decides the issue of causation as a matter of law. *See* Restatement (Second) of Torts § 434(1)(c).

The Defendants' argue that they are entitled to summary judgment because Chancellor failed to provide expert testimony to prove that the detergent was the *cause* of her ear and eye injuries. [DN 36]. Under Kentucky law, an expert, or another form of medical proof, is generally required to establish that an incident is the legal cause of a medical injury. *Lacefield v. LG Elecs., Inc.*, No. CIV.A. 3:06-12-KKC, 2008 WL 544472 (E.D. Ky. Feb. 26, 2008). This medical testimony must show that the "causation is probable and not merely possible." *Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965). This is unless, "causation is so apparent that lay members of the jury could easily determine whether and to what extent the defendant's conduct caused the plaintiff's injuries—the so-called 'layman's exception.'" *Auto-Owners Ins. v. Aspas*, No. 3:16-CV-189-DJH-RSE, 2018 WL 4643190, at *3 (W.D. Ky. Sept. 27, 2018) (citing *Hopkins v. Speedway Superamerica LLC*, No. CV 3:15-CV-834-DJH, 2017 WL 3302661, at *3 (W.D. Ky. Aug. 2, 2017). Essentially, the layman's exception is a test as to whether the cause of injury is reasonably understood through common knowledge. *Blair v. GEICO Gen. Ins. Co.*, 917 F. Supp. 2d 647, 658 (E.D. Ky. 2013).

The Kentucky Supreme Court allowed recovery under the layman's exception when a Plaintiff, after "a severe blow to the head" during an automobile accident, began having consistent headaches that were not present before the injury. *Tatham v. Palmer*, 439 S.W.2d 938, 939 (Ky.1969). But, application of the layman's exception is seldom allowed when there are additional potential causes for the claimed injury. *See Blair*, 917 F. Supp. 2d at 658 (neck pain from a car

accident required medical expertise on causation when the plaintiff had pre-existing neck pain, an earlier brain tumor, and fibromyalgia); *Lacefield*, No. CIV.A. 3:06-12-KKC, 2008 WL 544472, at *4 (required medical proof when Plaintiff's claim that a loud cell phone ring caused his tinnitus was beyond what a jury could "reasonably infer"); *Hopkins v. Speedway Superamerica LLC*, No. CV 3:15-CV-834-DJH, 2017 WL 3302661, at *4 (W.D. Ky. Aug. 2, 2017)(a history of shoulder pain and a recent shoulder surgery required expert testimony to prove causation); *Auto-Owners Ins.*, No. 3:16-CV-189-DJH-RSE, 2018 WL 4643190, at *3 (denying the layman's exception when there were multiple potential causes for the plaintiff's cervical pain).

Similarly, the layman's exception does not apply to the extent that Chancellor is claiming medical damages. Though it may be common knowledge that getting laundry detergent in one's eye and ear can cause discomfort, the extent of the potential injuries is beyond the scope of a lay person's medical understanding. Especially, as the Defendants have noted, given the "numerous potential alternative causes of Chancellor's injuries." [DN 36 at 9]. The undisputed facts in the medical records show Chancellor's preexisting conditions, such as cataracts, macular degeneration, and glaucoma. [DN 36-1 at 21]. Given these facts, it is not "so apparent" that the laundry detergent caused Chancellor's injuries. Therefore, some form of medical testimony is required.

Pursuant to Rule 26(a)(2)(A)-(B) of the Federal Rules of Civil Procedure, "[a] party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." And "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," then the "disclosure must be accompanied by a written

report—prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2)(A)-(B). The 2010 Advisory Committee Notes clarifies that:

> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C). The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present.

The Defendants' summary judgment motion argues: Chancellor's claim for negligence requires expert testimony to prove causation, but apart from the Initial Disclosure Statement listing the names of all treating physicians as "individuals likely to have discoverable information," Plaintiff failed to provide any such disclosure. Plaintiff mistakenly responded that the Rule 26(a)(2) requirements "apply only to experts retained for purposes of this litigation." [DN 39 at 8]. This is not the case. As Rule 26 and the Advisory Committee notes make clear, an expert report is not required for a treating physician, but the disclosure requirements of Rule 26(a)(2)(C), are. This means that in order to use a treating physician as an expert Plaintiff would have needed to disclose: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Federal Rule of Civil Procedure 37 parallels this requirement: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence ... unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The question then shifts to whether Plaintiff's failure to comply with Rule 26 is either harmless or substantially justified. The advisory committee note for Rule 37 "strongly suggests that 'harmlessness' involves an honest mistake on the part of a party coupled

with sufficient knowledge on the part of the other party." *Sommer v. Davis*, 317 F.3d 686 (6th Cir. 2003) (citing *Vance v. United States*, No. 98–5488, 1999 WL 455435, at *5 (6th Cir. June 25, 1999) (unpublished table decision)). "An honest mistake is one that would not indicate bad faith or an attempt to conceal information, which would include a genuine misinterpretation or misunderstanding of a rule or order." *Blair*, 917 F. Supp. 2d at 656 (citing *Dennis v. Sherman*, 2010 WL 1957236, at *2 (W.D.Tenn. 2010)). Plaintiff's argument that the scheduling order deadline and "FRCP 26(a)(2), apply only to experts retained for purposes of this litigation" indicates a clear misunderstanding of Rule 26(a)(2). [DN 39 at 8]. Though with further research such misinterpretation could have been prevented, the Court considers it an "honest mistake" because there is no sign of bad faith. Further, since both Chancellor's medical records and treating physicians were listed in her initial discloses on September 9, 2020, the Defendants had "sufficient knowledge."

Next, the Court must determine if the extent of the treating physician's testimony permitted is sufficient to prove causation. Initially, it appears that Plaintiff intended to use two of her treating physicians to prove causation: Dr. Timothy Hobbs for her eye injury and Dr. James Hawkins for her ear injury. [DN 11; DN 39; DN 74; DN 75]. Dr. Hobbs was not formally deposed but instead informed Chancellor that the potential eye injury related to the detergent were limited to her initial office visit and the medications prescribed therein. [DN 76]. Subsequently, Plaintiff informed the Court that only Dr. Hobbs's expenses for the treatment stated above would be claimed against the Defendants going forward. *Id.* Given the medical records indication that Chancellor was treated for pain caused by the detergent and prescribed medication in relation thereto, a juror could conclude that said office visit, and the limited medical expenses related to it, resulted from the detergent falling in her eye. [DN 36-1 at 17]. Therefore, when viewed in the light most favorable

7

to the non-moving party, the medical records, without additional medical testimony, are sufficient for a jury to find causation solely for the medical expenses from the initial office visit that are clearly indicated as caused by the detergent.

Conversely, Plaintiff was able to depose her otolaryngologist, Dr. Hawkins, and obtain an expert treating physician's opinion on causation. [DN 75]. A treating physician's testimony is limited to the "'core' of the patient's treatment, meaning what the physician learned through actual treatment and from the plaintiff's records up to and including that treatment." *Auto-Owners Ins.*, No. 3:16-CV-189-DJH-RSE, 2018 WL 4643190, at *4 (W.D. Ky. Sept. 27, 2018) (internal citations omitted). Dr. Hawkins, an experienced ear, nose, and throat specialist, began treating Chancellor shortly after the incident at the Dollar Store. From January to March of 2020, Chancellor visited Dr. Hawkins four times for treatment of her ear. [DN 36-3]. During this treatment, Dr. Hawkins concluded that Chancellor's "hearing loss is from the chemical irritation from her recent injury." *Id.* at 5. On September 9, 2020, the Defendants were made aware of these medical records in Plaintiff's Rule 26 Initial Disclosure Statement. [DN 11]. Even limited to the "core" of Chancellor's treatment, Dr. Hawkins's deposition and medical records clearly state that the primary cause of Chancellor's hearing loss was the reaction the ear had to the chemicals in the detergent. [DN 75]. Because Dr. Hawkins's testimony regarding Chancellor's ear injury is sufficient for a jury to determine that the detergent that entered Plaintiff's ear caused her injuries; the Court must deny the Defendants' summary judgment motion for Chancellor's negligence claim.

### B. Strict Products Liability

Under Kentucky law, all products liability actions, "regardless of whether the case involves failure to adequately warn, defective design, or other products liability theories, [require proof

that] the product is defective." *Fields v. Stanley Access Techs. LLC*, No. 5:18-CV-016-CHB, 2020 WL 734472, at *4 (E.D. Ky. Feb. 13, 2020) (citing *Leslie v. Cincinnati Sub-Zero Prods., Inc.*, 961 S.W.2d 799, 803–04 (Ky. Ct. App. 1998) (internal citation omitted)). When a defect is outside the general knowledge of a lay person, which is predominately the case, expert testimony is required. *Id.* (citing *Williams v. Toyota Motor Sales, U.S.A.*, No. CIV.A. 2:11-38-DCR, 2012 WL 176473 at *4 (E.D. Ky. Jan. 20, 2012)). "A jury cannot speculate that a product is defective 'simply because an unusual or unexplained event has occurred.'" *Id.* (citing *Thomas v. Manchester Tank & Equip. Corp.*, No. 3:03-CV-705-H, 2005 WL 3673118, at *2 (W.D. Ky. May 13, 2005); *Stevens v. Keller Ladders*, 1 F. App'x 452, 458 (6th Cir. 2001)). "Where an incident could result from more than one cause, plaintiff tips the balance from possibility to probability only by ruling out other theories of causation." In re Beverly Hills Fire Litig., 695 F.2d 207, 219 (6th Cir. 1982).

      Plaintiff argues that the "particular jug of liquid laundry detergent contained obvious manufacturing defects" because "[t]he top of the jug was not screwed on properly." [DN 39 at 5–6]. Chancellor goes on to state that her "injuries were exacerbated by the absence of the plastic spout or funnel which is normally incorporated into the Xtra laundry detergent jug." *Id.* at 6. These arguments, without the support of an expert, are solely based on circumstantial evidence. Plaintiff failed to rule out any other possible "theories of causation." Especially given her argument that the cap was not screwed on properly, which, the Defendants explained, could have been caused by a third-party tampering with it. [DN 43 at 9]. The lack of an expert to prove any product defects, and the minimal circumstantial evidence provided by Plaintiff is "insufficient to shift the likelihood of product defect from possibility to probability" because at trial a jury would be left to speculate just how the cap became improperly screwed on, or why the bottle was missing its standard funnel, as was alleged by Chancellor. *Fields*, No. 5:18-CV-016-CHB, 2020 WL 734472, at *4. Given

Plaintiff's failure to meet the required "burden of producing specific facts showing a genuine issue for trial concerning an identifiable defect or causation" related to the laundry detergent, Defendants are entitled to summary judgment on the strict liability claim. *Id.*

### C. Breach of Warranty

Under Kentucky law, "privity of contract is an essential element of a claim for breach of warranty." *Pruitt v. Genie Indus., Inc.*, No. CIV.A. 3: 10-81-DCR, 2013 WL 139701, at *3 (E.D. Ky. Jan. 10, 2013); (quoting *Allen v. Abbott Labs.*, No. 11-146-DLB, 2012 WL 10508, at *5 (E.D. Ky. Jan. 3, 2012)); *see* KRS § 355.2-318. Defendants argue that "[b]ecause Chancellor has not alleged and cannot demonstrate that she was in privity with Church & Dwight, her breach of warranty claim fails as a matter of law." [DN 36 at 16]. Plaintiff failed to address this claim in her response. According to Rule 56(e), a nonmoving party must respond with "specific facts demonstrating the existence of genuine issues of material fact." *Spurlock v. Whitley*, 79 Fed.Appx. 837, 839 (6th Cir. 2003). Further, a nonmoving party is "deemed to have waived its opportunity to designate facts in accordance with Rule 56(e) when it fails to properly file a response." *Id.* (citing *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992)). "It is not the role of the district court to develop facts for the nonmoving party; therefore, Plaintiff has effectively waived its opposition to this argument." *Lambert v. G.A. Braun Int'l, Ltd.*, No. 3:14-CV-00390-JHM, 2016 WL 3406155, at *4 (W.D. Ky. June 17, 2016) (citations omitted). Because this argument was not mentioned in Plaintiff's response, and the Court finds the Defendants' privity argument persuasive, summary judgment is granted for the breach of warranty claim.

### IV. Conclusion

For the reasons stated, **IT IS HEREBY ORDRED** that Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. [DN 36].

Additionally, Plaintiff's Motion to Defer Ruling, [DN 44], is **DENIED AS MOOT**.

    **IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge**
United States District Court

October 4, 2021

cc: counsel