UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:20-cv-00145-TBR

CAROLYN CHANCELLOR                                                           PLAINTIFF

v.

CHURCH & DWIGHT CO., INC. *et al.*                                           DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendants' Motion in Limine. [DN 57]. Plaintiff responded. [DN 73]. As such, this matter is ripe for adjudication. For reasons stated herein, Defendants' Motion in Limine is **GRANTED IN PART** and **DENIED IN PART**.

I.   **Background**

The facts of this case are set out in greater detail in the Court's prior opinion and are therefore only briefly summarized here. [DN 82]. Plaintiff Carolyn Chancellor brought this action against the Defendants for negligence, strict liability, and breach of warranty after laundry detergent fell into her ear and eyes when a fellow customer attempted to help her get the bottle off the top shelf. [DN 1-1 at 3]. After a Motion for Summary Judgment by the Defendants, only Plaintiff's claim for negligence remains. [DN 82]. Defendants now move *in limine* to exclude five pieces of evidence from trial. [DN 57].

II.   **Legal Standard**

Using the inherent authority to manage the course of trials before it, this Court may exclude irrelevant, inadmissible, or prejudicial evidence through *in limine* rulings. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)); *Louzon v. Ford Motor Co.*, 718

F.3d 556, 561 (6th Cir. 2013). Unless such evidence is patently "inadmissible for any purpose," *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997), though, the "better practice" is to defer evidentiary rulings until trial, *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975), so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context," *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010). Relevant evidence is admissible unless barred by the United States Constitution, a federal statute, the Federal Rules of Evidence, or rules of the Supreme Court. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. A ruling *in limine* is "no more than a preliminary, or advisory, opinion." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), aff'd, 469 U.S. 38). Consequently, the Court may revisit its *in limine* rulings at any time and "for whatever reason it deems appropriate." *Id.* (citing *Luce*, 713 F.2d at 1239).

### III. Discussion

The Defendants move to exclude Chancellor from using; (1) any expert testimony, (2) evidence of future medical expenses, (3) evidence of understaffing and staff's responsiveness, (4) golden rule arguments, and (5) conscience of community arguments.

#### A. Expert Testimony

Defendants' argument against permitting Chancellor to use any expert testimony reiterates prior arguments in their Motion for Summary Judgment. [DN 36]. The Court held that Chancellor's failure to properly disclose her treating physician, Dr. Hawkins, as an expert under Federal Rule of Civil Procedure 26(a)(2)(C) did not bar her from using him to prove causation.

[DN 82]. Exclusion of the witness was not proper under Rule 37 because it was an honest mistake and the Defendants were aware of her intention to use the physician, making it a "harmless" error. *Id.* Though Dr. Hawkins's testimony is limited to the core of Chancellor's treatment, this does not prohibit him from discussing causation or expenses as long as that testimony stems from what he learned while treating Chancellor, and not in preparation for trial. *Id.*; *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 870–71 (6th Cir. 2007). The scope of the testimony is therefore limited, but not excluded in its entirety. *Smith v. Baker*, No. CIV. 11-99-GFVT, 2013 WL 1829833 (E.D. Ky. Feb. 11, 2013) (citing *Fielden*, 482 F.3d at 870–71). Given the Court's prior acceptance of Dr. Hawkins's deposition and testimony on causation, the *in limine* motion to prevent him from testifying in that regard, is denied.

### B. Future Medical Expenses

"To determine what evidence is required for future medical costs, the Court looks to Kentucky substantive law." *Highley v. 21st Century Ins. Co.*, Civil Action No. 5:17-cv-213-CHB, 2018 WL 3762978, at *3 (E.D. Ky. Aug. 8, 2018) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Under Kentucky law, future medical expenses must be proven by more than speculation— they must be proven by "positive and satisfactory evidence." *Id.* (citing *Howard v. Barr*, 114 F.Supp. 48 (W.D. Ky. 1953)). Which, as the Defendants noted, "typically requires expert medical testimony." *Auto-Owners Ins. v. Aspas*, No. 3:16-CV-189-DJH-RSE, 2018 WL 4643190 (W.D. Ky. Sept. 27, 2018) (citing *Holbrook v. Dollar Gen. Store Corp.*, No. 2012-CA-001794-MR, 2014 WL 4049891, at *9 (Ky. Ct. App. Aug. 15, 2014)).

The Defendants argue that without an expert to testify on the matter, future medical expenses cannot be proven, and therefore, Chancellor should be precluded from claiming any such damages. [DN 57 at 2]. As discussed above, Chancellor has a Rule 26(a)(2)(C) expert, her treating

3

physician, Dr. Hawkins. [DN 82]. A treating physician, without a Rule 26(a)(2)(B) disclosure is permitted to testify "within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment." *Fielden*, 482 F.3d at 871. The question then is whether Chancellor's future medical expenses fall into the "core" of Dr. Hawkins treatment. Courts have considered a variety of factors to help determine whether testimony falls into the required "core:"

> (1) whether the physician reached his conclusion at the time of treatment; (2) whether the opposing party would be surprised by the testimony; (3) whether the condition at issue leaves room for debate as to the specific ailment and its sources; (4) whether the physician relied upon ordinary medical training in drawing his conclusion; and (5) whether the physician will rely on tests, documents, books, videos, or other sources not relied upon during treatment.

*Auto-Owners Ins.*, No. 3:16-CV-189-DJH-RSE, 2018 WL 4643190, at *4 (citing *Hinkle v. Ford Motor Co.*, No. CIV. A. 3:11-24-DCR, 2013 WL 1992834, at *2 (E.D. Ky. May 13, 2013)).

Dr. Hawkins, an experienced otolaryngologist, or ear, nose, and throat doctor (ENT), began treating Chancellor in January 2020, shortly after the detergent incident. [DN 36-3]. Plaintiff visited Dr. Hawkins for treatment on January 17, 2020, February 7, 2020, February 21, 2020, and March 20, 2020 and again on August 5, 2021. *Id.*; [DN 75]. On her final visit, initiated by Dr. Hawkins, he recommended "amplification on her left ear to improve her communication." [DN 75 at 40,69]. This recommendation for a future medical expense of "amplification," or hearing aids, was given during his ongoing treatment of Chancellor's injury, satisfying the first factor above. The second factor relates to surprise: "Rule 26(a)(2) is intended to limit unfair surprise regarding expert's testimony." *Hinkle*, No. CIV. A. 3:11-24-DCR, 2013 WL 1992834, at *6. Defendants learned of Dr. Hawkins early in this dispute. [DN 11]. They deposed Chancellor and were informed that she was unable to hear out of her left ear. [DN 39-8]. It is no surprise that her treating physician, who has treated Plaintiff's ear pain since the incident occurred, would testify as to future

medical expenses related to her ears. Dr. Hawkins's deposition blatantly states that the chemical reaction inside of her ear with the detergent is the direct cause of her hearing loss and ultimate need for hearing aids. [DN 75]. He claims that his opinion testimony is based on his experience, the examination of the patient, and her history without any mention of outside materials. *Id.* Looking at all the factors, Dr. Hawkins's testimony regarding future medical expenses falls within the core of his treatment of Chancellor and therefore should not be precluded. As such, Defendants' Motion in Limine regarding future medical expenses is denied.

### C. Understaffing/Staff's Responsiveness

Defendants argue that "[a]ny evidence related to the perceived attitude of Family Dollar employees or their responsiveness to the incident at the Family Dollar Store is irrelevant and should be excluded because it has no bearing on any issues presently before this Court." [DN 57 at 2–3]. Chancellor responded stating that "[t]his evidence is critical to the Plaintiff's case," but then proceeded to only discuss the understaffing issue, not the "perceived attitude" of the employees. [DN 73]. Because evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and Plaintiff intends to use the fact that only one employee was present in the store at the time of the incident to prove her negligence claim, the understaffing issue is relevant. *Id.*; Fed. R. Evid. 401. Conversely, the attitude of the employees has not been argued by either party until this motion, and was not discussed in Plaintiff's response, therefore the Court agrees that the "perceived attitude" of the employees is irrelevant. [DN 57]. Defendants contend that Chancellor's perception of Dollar Store's employees would only be used to "inflame the jury," but the Court need not address Rule 403 as its irrelevance is sufficient for preclusion. Therefore, Defendants' Motion in Limine to exclude evidence of understaffing is

5

denied, but their motion to exclude evidence of the employee's attitude and Chancellor's perception thereof is granted.

### D. "Golden Rule" Arguments

Defendants asked the Court to prohibit "Golden Rule" arguments. [DN 57 at 3]. Such arguments have jurors "imagine themselves or someone they care about in the position of the plaintiff" or ask them "to step in the shoes of the plaintiff." *Walker v. Metro. Urology, P.S.C.*, No. 2014-CA-000732-MR, 2016 WL 1403480 at *6 (Ky. Ct. App. Apr. 8, 2016) (citing *Caudill v. Commonwealth*, 120 S.W.3d 635, 675 (Ky.2003)); *First & Farmers Bank of Somerset, Inc. v. Henderson*, 763 S.W.2d 137, 142 (Ky. Ct. App. 1988) (citing *Stanley v. Ellegood, Ky.*, 382 S.W.2d 572, 575 (1964)). Plaintiff responded that she "[does] not intend to make any such arguments to the jury." [DN 73]. As such, "Golden Rule" arguments are prohibited and Defendants' Motion in Limine for the matter is granted.

### E. Conscience of Community

Defendants urge the Court to preclude any "conscience of the community" arguments. [DN 57]. They focus on the prejudicial implications such arguments can make, particularly in cases involving corporate defendants. *Id.* By contrast, Plaintiff argues that the jury is "indeed the 'conscience of the community.'" [DN 73]. The Sixth Circuit courts tend to disfavor such arguments. *Lotz v. Steak N Shake, Inc.*, No. CV 5:19-277-DCR, 2021 WL 227035, at *5 (E.D. Ky. June 3, 2021) (citations omitted); *Strickland v. Owens Corning*, 142 F.3d 353, 358–59 (6th Cir. 1998). Often these arguments can be "distraction[s] from the jury's sworn duty to reach a fair, honest and just verdict." *Lotz*, No. CV 5:19-277-DCR, 2021 WL 2270353, at *5 (citing *Lock v. Swift Transp. Co. of Arizona*, LLC, 2019 WL 6037666 at *2 (W.D. Ky. Nov. 14, 2019)). Accordingly, this portion of Defendants' Motion in Limine is granted.

IV. Conclusion

For the reasons stated, **IT IS HEREBY ORDRED** that Defendants' Motion in Limine, [DN 57], is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**.

Thomas B. Russell, Senior Judge
United States District Court

October 4, 2021

cc: counsel